UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON T. GATES,

                Plaintiff,

    v.

JOSE BRIONES, et al.,

               Defendants.

Case No. C20-536-RAJ-MLP

REPORT AND RECOMMENDATION

## I.  INTRODUCTION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Brandon T. Gates ("Plaintiff"), proceeding *pro se*, filed a complaint alleging violations of his rights under the Eighth and Fourteenth Amendment during his pretrial incarceration at the Island County Jail ("ICJ") by Island County Corrections Chief Jail Administrator Jose Briones and Island County Corrections Lieutenant William Becker ("Defendants"). (Pl.'s Compl. (Dkt. # 6) at 4-8.) On July 17, 2020, Defendants filed a motion for summary judgment ("Defendants' Motion") arguing: (1) Plaintiff failed to state claims upon which relief could be granted; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff failed to exhaust his administrative remedies on his third claim prior to bringing this action. (Defs.' Mot. (Dkt. # 33) at 1.)

REPORT AND RECOMMENDATION - 1

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Defendants' Motion (dkt. # 33) be GRANTED and that Plaintiff's claims be DISMISSED. Consequently, the Court recommends that Plaintiff's Motion for Service of Subpoena (dkt. # 53) be DENIED as moot.

## II.   BACKGROUND

### A.   Relevant Procedural History

On April 24, 2020, Plaintiff filed his § 1983 complaint.[1] (Pl.'s Compl. at 4-8.) On April 29, 2020, this Court directed Plaintiff's complaint be served on Defendants. (Order (Dkt. # 8).) On June 23, 2020, Defendants answered Plaintiff's complaint, denying its allegations. (Answer (Dkt. # 21).) On July 17, 2020, Defendants' Motion was filed. (Defs.' Mot.)

On July 23, 2020, Plaintiff filed a motion for subpoenas. (Pl.'s Mot. (Dkt. # 38).) On August 3, 2020, this Court entered an order striking Plaintiff's motion for subpoenas but ordered the Clerk to issue Plaintiff his requested subpoenas. (Order (Dkt. # 40).) On August 10, 2020, Plaintiff filed a response to Defendants' Motion and submitted a declaration.[2] (Pl.'s Resp. (Dkt. # 42); Pl's Decl. (Dkt. # 43).) On August 14, 2020, Defendants filed their reply. (Defs.' Reply

---

[1] Plaintiff has additionally filed two other pending § 1983 actions involving Defendants in this Court. On June 12, 2020, Plaintiff filed a § 1983 complaint in *Gates v. Becker, et al.*, Cause No. C20-611-JCC-MAT (dkt. # 6) alleging that Defendant Becker interfered with Plaintiff's access to the courts by opening his legal mail outside of his presence and by not providing him a copy of his prison account balance. *Id.* at 4-8. On September 24, 2020, Plaintiff filed an amended § 1983 complaint in *Gates v. Briones, et al.*, Cause No. C20-895-JCC-MAT (dkt. # 9). Plaintiff's § 1983 complaint in that matter raises claims alleging Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in administrative segregation and that Defendant Becker is denying him access to the courts because ICJ does not have a law library and Defendant Becker failed give him his account balance. *Id.* at 4-8.

[2] On August 20, 2020, Plaintiff filed an additional declaration. (Pl.'s Supp. Decl. (Dkt. # 49).) On August 27, 2020, Plaintiff filed a supplemental response to Defendants' Motion, labeled as "objections," and submitted additional declarations from himself and another inmate. (Dkt. ## 51-53.) Despite Plaintiff's late filing, the Court has considered Plaintiff's additional responsive pleadings for the purposes of this Report and Recommendation.

1  (Dkt. # 45).) On September 24, 2020, Plaintiff filed his Motion requesting service of his
2  requested subpoenas. (Pl.'s Mot.)

3  **B.      Plaintiff's Claims**

4  Plaintiff alleges that, under his first claim, he was subjected to cruel and unusual
5  punishment under the Eighth Amendment by Defendants. (Pl.'s Compl. at 4-5.) Plaintiff alleges
6  two other ICJ inmates emptied spray bottles of urine into his cell and banged on his cell door at
7  multiple times between March 10, 2020, and March 17, 2020, and Defendants failed to
8  intervene. (*Id.*)

9  Under his second claim, Plaintiff alleges his Fourteenth Amendment right to equal
10 protection was violated by Defendants because prison officials failed to move him to a new cell
11 after inmates sprayed urine into his cell. (Pl.'s Compl. at 6-7.) Plaintiff alleges he filed three
12 grievances about the issue in a four-day span but received no response. (*Id.*) Plaintiff alleges he
13 was also left in his cell for two days without a means of being able to clean up the sprayed urine.
14 (*Id.*)

15 Finally, Plaintiff alleges in his third claim that Defendant Becker subjected him to cruel
16 and unusual punishment under the Eighth Amendment, and violated his Fourteenth Amendment
17 right to equal protection, by denying him access to certain store items. (Pl.'s Compl. at 7-8.)
18 Plaintiff alleges he is a diabetic and Defendant Becker denied him store items containing sugar.
19 (*Id.*) Plaintiff alleges he sought he store items to help alleviate low blood sugar issues at night
20 arising as a complication of managing his diabetes. (*Id.*) Plaintiff additionally alleges his food
21 portions were made smaller shortly after his denied requests. (*Id.*)

22
23

### C. Island County Jail Grievance Procedure

Defendant submitted a declaration from Defendant Becker detailing ICJ's grievance policy. (Becker Decl. (Dkt. # 35) at ¶ 3, Ex. A at 7-12.) Defendant Becker attached a copy of the ICJ Inmate Handbook as an exhibit to his declaration. (*Id.*, Ex. A at 7-12.) Per the ICJ Inmate Handbook, all ICJ inmates shall "be allowed to file a grievance . . . whenever the inmate believes they have been subjected to abuse, harassment, abridgment of civil right, or denied privileges enjoyed by other inmates while the inmate is in the custody of the facility. (*Id.* at 10.) The inmate shall specify the details of the incident and place it in a sealed, unstamped envelope addressed to a supervisor. (*Id.*) Per the handbook, a written response to the inmate will be provided within five working days of the findings and action be taken, if any, to resolve the grievance. (*Id.* at 11.) If additional time is required to investigate and to solve the grievance, the inmate shall be notified. (*Id.*)

The grievance procedure additionally identifies a written appeal process for an unfavorable grievance decision. (Becker Decl., Ex. A at 11.) An ICJ shift lieutenant is required to review, investigate, and respond to the initial grievance appeal. (*Id.*) A second appeal to the jail administrator stating the inmate's objections may also be initiated if the inmate still objects to the shift lieutenant's disposition of the initial grievance appeal. (*Id.*)

On March 9, 2018, Defendant Briones distributed a memo that amended the inmate grievance policy. (Becker Decl., Ex. A at 12.) It specifies that if at any time an inmate elects to file a grievance, they may request a complaint form from ICJ staff. (*Id.*) It additionally details the grievance appeals process based on whether it is an emergency filing, a standard grievance, or an appeal. (*Id.*) The memo notes standard initial grievances are to be reviewed within seven business days and that appeals will be reviewed within 14 business days. (*Id.*)

### D. Plaintiff's Grievance History

In his declaration, Defendant Becker attached copies of the grievances and grievance appeals filed by Plaintiff based on the allegations identified in his complaint. (Becker Decl. at ¶¶ 4, 7, Ex. B at 14-26, Ex. E at 54-62.) On March 10, 2020, through March 15, 2020, Plaintiff filed several emergency and initial grievances concerning his claim that inmates were spraying urine into his cell, his request to be moved, and his request that he not be placed in administrative segregation.[3] (*Id.* at 14-18, 21.) On March 18, 2020, ICJ staff responded that Plaintiff had been moved to a different cell block, that one of the inmates he had issue with had also been moved to a different cell block, and therefore, the issue was moot. (*Id.* at 19-20.)

On March 23, 2020, Plaintiff filed an initial appeal of his grievances concerning urine being sprayed into his cell, specifically challenging his move into administrative segregation. (Becker Decl., Ex. B at 23.) On March, 24, 2020, Defendant Becker responded that Plaintiff was placed in administrative segregation as the result of a separate disciplinary board hearing due to multiples instances of Plaintiff fighting with other inmates and that his concerns regarding urine being thrown in his cell had been alleviated by being place in a separate cell block. (*Id.* at 24, Ex. D at 30.)

On March 25, 2020, Plaintiff appealed Defendant Becker's initial appeal decision to Defendant Briones. (Becker Decl., Ex. B at 25.) On March 27, 2020, Defendant Briones responded that Plaintiff was placed in administrative segregation as a result of multiple altercations with other inmates, and that because of his inability to be housed with other inmates without issue, he would remain in administrative segregation until his behavior improved. (*Id.* at

---

[3] Per Defendants, upon an ICJ staff investigation into video of the cell area, the alleged urine being thrown into Plaintiff's cell was from another inmate accidentally spilling water from a mop bucket when it bumped up against a cell door. (Becker Decl. at ¶ 4, Ex. C at 28.)

26; Briones Decl. (Dkt. # 34) at ¶¶ 4-5; *see* Becker Decl., Ex. D at 30.) Defendant Briones additionally noted ICJ staff were made aware of his issue regarding inmates throwing urine into his cell and internal moving of inmates and discipline were approved in the facility to address it. (Becker Decl., Ex. B at 26.)

On February 8, 2020, and on February 18, 2020, Plaintiff filed initial grievances concerning being given food portions "well below standard" and due to not receiving a snack on his tray. (Becker Decl., Ex. E at 54, 56.) On February 10, 2020, ICJ staff responded that cooking staff had been made aware of the food portion and snack issue. (*Id.* at 55.) On February 18, 2020, ICJ staff responded that Plaintiff needed to let the deputy serving the meal know of the snack omission so the kitchen could correct it. (*Id.* at 57.)

On March 26, 2020, Plaintiff filed an initial grievance alleging that one of the officers at ICJ was stopping him from attaining certain store items he needed for his diabetes in an attempt to kill him. (Becker Decl., Ex. E. at 58.) On March 27, 2020, ICJ staff responded that Plaintiff's restrictions on access to certain store items was done pursuant to Plaintiff's restricted diabetic diet and ICJ medical staff instructions. (*Id.* at 59; *see* Becker Decl. at ¶ 7.)

On March 28, 2020, Plaintiff filed an initial grievance appeal concerning the denial of store items based on his diabetic diet. (Becker Decl., Ex. E. at 61.) On April 3, 2020, Defendant Becker responded to Plaintiff's initial grievance appeal that, on March 15, 2020, an audit of medical restrictions was done on commissary accounts and Plaintiff's account was found not to be accurate according to ICJ medical staff. (*Id.* at 62.) As a result, Plaintiff's commissary account was updated to match his restricted diet medical status. (*Id.*) Defendant Becker further explained that Plaintiff was denied from purchasing chips from the commissary because medical did not approve of the purchase based on the chips containing carbohydrates. (*Id.*)

Defendant Becker notes in his declaration that ICJ maintains a grievance log documenting all grievances and appeals for all inmate grievances. (Becker Decl. at ¶ 9.) Per the ICJ grievance log, Plaintiff failed to appeal his initial grievance appeal related to his diet to Defendant Briones. (*Id.*)

### III.    LEGAL STANDARDS

#### A.    Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford*

*Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B. Section 1983 Claims

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of his rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act he was legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### IV.    DISCUSSION

Based on the record before the Court, there are no genuine issues of material fact regarding Plaintiff's first and second claims against Defendants. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248 (A disputed fact is material if it "might affect the outcome of the suit

under the governing law.") As explained further below, Plaintiff fails to allege facts sufficient to maintain his first and second claims.[4]

In addition, Plaintiff failed to file a grievance to administratively exhaust his third alleged claim. Due to Plaintiff's failure to demonstrate he exhausted his available administrative remedies, or that administrative remedies were made effectively unavailable to him by ICJ officials, summary judgment is appropriate on Plaintiff's third claim pursuant to the Prison Litigation Reform Act ("PLRA").

### A.     Failure to Protect Claim

Plaintiff initially argues he was subjected to cruel and unusual punishment under the Eighth Amendment because Defendants failed to intervene after two other inmates allegedly sprayed urine into his cell. (Pl.'s Compl. at 4-5.) Because the conduct complained of occurred during Plaintiff's confinement as a pretrial detainee, his rights derive from the Due Process Clause of the Fourteenth Amendment and not the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Correspondingly, pretrial detainees have a Fourteenth Amendment "due process right to be free from violence from other inmates." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc). To establish a violation of this right, a pretrial detainee must establish that the defendant was deliberately indifferent under the following standard:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial

---

[4] Having decided Plaintiff's allegations fail to state claim against Defendants in the first instance, the Court declines addressing whether Defendants are additionally entitled to qualified immunity. Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308, (2015); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, a qualified immunity analysis is unnecessary because Plaintiff fails to allege facts demonstrating Defendants' actions violated his constitutional rights on his first two claims or that he properly exhausted his administrative remedies on his third claim prior to bringing this action.

REPORT AND RECOMMENDATION - 9

risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.'" *Id.* (quoted source omitted). The plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

Here, Plaintiff has failed to demonstrate he was at a substantial risk of suffering serious harm based on his confinement conditions or that Defendants did not take reasonable available measures to abate any risk of keeping Plaintiff housed near the inmates he took issue with because of the alleged incident. It is clear from the record Defendants promptly responded to Plaintiff's concerns regarding the alleged incident and that he was moved from his cell. (*See* Becker Decl. at ¶ 4, Ex. B at 14-18, 21, 23, 25-26.) Plaintiff was moved into administrative segregation, shortly after the alleged incident, as a result of a disciplinary board determination concerning Plaintiff's multiple instances of fighting with other inmates. (*See id.*, Ex. B at 19, 24, 26, Ex. D at 30.) One of the inmates Plaintiff took issue with was also moved to another cell block after the alleged incident. (*See id.*, Ex. B at 19.) Moreover, Defendants additionally present evidence that video footage from the cell area demonstrated the alleged urine thrown into Plaintiff's cell was water spilled from a mop bucket. (*See* Becker Decl. at ¶ 4, Ex. C at 28.)

As such, it is clear from the record Defendants took reasonable measures to separate Plaintiff from the inmates he took issue with to help quell any more problems from occurring between Plaintiff and the other two inmates after the alleged incident. Based on the record before the Court, Plaintiff has failed to state a failure to protect action on his first claim. The Court

recommends summary judgment be granted in Defendants' favor on Plaintiff's failure to protect claim.

B.  **Equal Protection Claim**

Plaintiff argues in his second claim that his Fourteenth Amendment right to equal protection was violated because Defendants failed to move him to a new cell after two other inmates allegedly sprayed urine into his cell. (Pl.'s Compl. at 6-7.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all person similarly situated should be treated alike." *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal citation omitted)). To state a claim for violation of the Equal Protection Clause, a plaintiff must show that "the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class"—that is, a plaintiff must show that "a defendant acted at least in part because of a plaintiff's protected status." *Id.* at 1082 (internal quotation marks omitted).

Here, there is no evidence in the record Defendants failed to move Plaintiff into a new cell or that Defendants failed to do so on account of his race. As explained earlier above, Plaintiff was moved to administrative segregation after a disciplinary board hearing determined he was fighting with other inmates. (*See* Becker Decl., Ex. B at 19, 24, 26, Ex. D at 30.) Plaintiff's allegations that Defendants failed to move him are conclusory, unsupported by the record, and therefore, insufficient to create a genuine issue of material fact to preclude summary judgment on this claim. The Court recommends summary judgment be granted in Defendants' favor on Plaintiff's equal protection claim.

**C.     Access to Store Items Claim**

Finally, Plaintiff argues Defendant Becker subjected him to cruel and unusual punishment under the Eighth Amendment, and that his Fourteenth Amendment right to equal protection was violated, based on the denial of his access to certain store items containing sugar at ICJ. (Pl.'s Compl. at 7-8.) However, based on the record before the Court, Plaintiff failed to administratively exhaust this claim because he did not appeal his initial grievance on this claim to Defendant Briones. Due to Plaintiff's failure to demonstrate he exhausted his available administrative remedies, or that administrative remedies were made effectively unavailable to him by ICJ officials, summary judgment is appropriate on this claim pursuant to the PLRA.

*i.     Exhaustion under the Prison Litigation Reform Act*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) accord, *Jones v. Bock,* 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA"); *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The prisoner must complete the administrative review process in accordance with the applicable rules. *Woodford*, 548 U.S. at 92-95 (requiring "proper" exhaustion, meaning full compliance by a prisoner with all procedural requirements of an institution's grievance process).

Defendants bears the initial burden of showing there was an available administrative remedy and that Plaintiff did not exhaust that remedy. *Albino*, 747 F.3d at 1169, 1172. Once that showing is made, the burden shifts to Plaintiff, who must either demonstrate he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172. The Supreme Court has previously explained administrative remedies are deemed "unavailable" to an inmate: (1) where the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is opaque and incapable of use; and (3) where administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *see Fuqua v. Ryan*, 890 F.3d 838, 850 (9th Cir. 2018). Because failure to exhaust is an affirmative defense Defendants must plead and prove, the ultimate burden rests with Defendants. *Albino*, 747 F.3d at 1172.

Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to Plaintiff, shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1168; Fed. R. Civ. P. 56(a). If administrative remedies have not been exhausted at the time an action is brought, the action must be dismissed without prejudice. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

      *ii.*  *Exhaustion of Administrative Remedies*

In this case, Defendants submitted evidence that ICJ provides an administrative grievance process and that Plaintiff failed to utilize it completely for his access to store items claim. (*See* Becker Decl. at ¶¶ 3, 9, Ex. A at 7-12.) This evidence satisfies Defendants' burden of showing there was an available administrative remedy and Plaintiff failed to exhaust that remedy. *See Woodford*, 548 U.S. at 92-95.

It is clear from the record Plaintiff failed to file a jail administrator level grievance appeal addressing his access to store items claim during his incarceration at ICJ. (*See* Becker Decl. at ¶ 9.) Plaintiff was familiar with ICJ's administrative grievance process, and its appellate review process, as Plaintiff properly grieved and exhausted his first two claims to Defendant Briones. (*See id.*, Ex. B at 14-18, 21, 23, 25-26; Briones Decl. at ¶¶ 4-5.) Plaintiff additionally fails to demonstrate, or otherwise address in his responsive pleadings, that an impediment existed making ICJ's available administrative remedies for grievances effectively unavailable to him. (*See* Pl.'s Resp.; *see also Albino*, 747 F.3d at 1172; *Ross*, 136 S. Ct. at 1859-60.) Accordingly, the record demonstrates Plaintiff failed to administratively exhaust his claim under the grievance procedures authorized at ICJ, as required by the PLRA, to maintain this action. *See* 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 85; *Albino*, 747 F.3d at 1165. The Court recommends summary judgment be granted in Defendants' favor on Plaintiff's access to store items claim.

In conclusion, viewing the record in Plaintiff's favor, the Court concludes Defendants are entitled to summary judgment in this action. Plaintiff's complaint should be dismissed with prejudice as to his failure to protect and equal protection claims. Plaintiff's complaint should be dismissed without prejudice as to his access to store items claim due to his failure to administratively exhaust. *See McKinney*, 311 F.3d at 1199; *Wyatt*, 315 F.3d at 1120.

## V. CONCLUSION

For the foregoing reasons, this Court recommends Defendant's Motion (dkt. # 33) be GRANTED, and that this matter be DISMISSED. Plaintiff's first and second claims, as identified in his complaint (dkt. # 6), are dismissed with prejudice for failure to state a claim. Plaintiff's third claim, as identified in his complaint (dkt. # 6), is dismissed without prejudice for failure to exhaust administrative remedies. Furthermore, this Court recommends Plaintiff's Motion for Service of Subpoena (dkt. # 53) be DENIED based on the Court's recommended dismissal. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 20, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Richard A. Jones.

Dated this 27th day of October, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge